**KIMBELL et al. v. RAPHAEL et al.**

No. 2056.

Court of Civil Appeals of Texas. Waco.

April 28, 1938.

Rehearing Denied May 19, 1938.

A. R. Stout and E. C. Driskell, both of Ennis, for appellants.

Felix Atwood, of Ennis, and Richard & A. P. Mays, of Corsicana, for appellees.

ALEXANDER, Justice.

Mrs. C. E. Kimbell, who is a resident property taxpayer of a certain levee improvement district in Navarro and Ellis counties, brought this suit against E. Raphael, E. K. Atwood, Mrs. Stella Atwood and Mrs. Mamie Cerf, as holders of a part of the bonds of said levee improvement district, to impress a trust on said bonds and to enjoin the sale thereof, and in the alternative, for damages for breach of Raphael's alleged agreement to procure 'a loan from the Reconstruction Finance Corporation to refinance the indebtedness of said district. Certain other taxpayers in the district intervened in the suit and adopted the pleadings filed by the plaintiff. The trial court sustained a general demurrer to the plaintiffs' petition and dismissed the suit. The plaintiffs appealed and have assigned this ruling as error.

The plaintiff, Mrs. Kimbell, alleged, in substance, that she was the owner of a tract of land in the levee improvement district in question of the value of $3000.-00; that said district had outstanding bonds in the sum of approximately $92,-000.00 held by certain parties in St. Louis; that the tax liens against her land in said district and all of the other land therein exceeded the value of said land; that on or about November 16, 1934, the defendant Raphael entered into an agreement with one Freeman, who was also a taxpayer in said district, whereby it was agreed that in consideration of a fee of $50.00 and the expenses incurred therein, he, Raphael, would secure a loan from the Reconstruction Finance Corporation "in an amount sufficient and necessary for the purpose of purchasing and acquiring said levee bonds from the then bondholders so that the tax lien and tax debt against said land in said district could be reduced and spread out over a period of years at a reduced amount and a cheaper rate of interest;" that he would acquire said bonds from the then holders at a price of approximately fifteen cents on the dollar and would fully refinance said district; that the expenses would be defrayed "by the said J. P. Freeman securing fifteen cents an acre for each acre owned by the various land owners, occupants and farmers in said district, of which amount, he, the said Raphael, was to receive $50.00" for his whole services; that said Freeman, in making said agreement, was acting for himself and for all other land owners in the district; that no time was fixed for the carrying out of the agreement but that a reasonable time was understood; that Freeman and one Kelsey, who was also a property owner, individually agreed with the said Raphael to pay him for all expenses and remade the agreement above stated; that shortly thereafter said Freeman and Kelsey were appointed supervisors of said levee improvement district, but it was not alleged that they ever qualified as such; that about December 15, 1934, the above agreement was renewed with the said Freeman and Kelsey as supervisors of said district; that at the request of Raphael, Freeman and Kelsey had a map made of the district and paid for same or a greater part thereof, and shortly thereafter the said Freeman and Kelsey collected from the land owners in the district approximately $35.00 for use in defraying the expenses in carrying out the agreement; that appellant Kimbell agreed to and accepted the agreement when she found out about same on or about January 1, 1935. It is not alleged who told her or that she ever gave Raphael any notice of acceptance before March, when she found out that Raphael had repudiated the alleged agreement; that the said Raphael and the defendant Atwood were partners in the buying and selling of levee improvement bonds and in the refinancing of the indebtedness of such levee improvement districts; that on or about January 10, 1935, Atwood, Raphael and Mrs. Mamie Cerf entered into a conspiracy for the purpose of acquiring all the land in the district; that on or about January 10, 1935, Raphael and At-

wood purchased $88,000.00 of the bonds of said district with money furnished by Mrs. Mamie Cerf, for a price of less than ten cents on the dollar, and that the said Raphael, Atwood and Cerf are now claiming to be the owners of said bonds; that as such owners they caused tax suits to be filed against Mrs. Kimbell and various other land owners in said district to collect taxes for the payment of said bonds, and that judgments have been taken in said tax suits, and that the plaintiff Mrs. Kimbell's land, of the value of $3,000.00, will be sold in satisfaction thereof unless relief is granted herein; that unless a trust is impressed on said bonds, appellant Mrs. Kimbell will be damaged. Mrs. Kimbell prayed that a trust be impressed on said bonds in her behalf and that the holders thereof be enjoined from selling the same, and, in the alternative, she prayed for damages in the sum of $3,000.00. The supervisors of the district at one time intervened in the suit but have since withdrawn and are not now before the court. Likewise, Freeman and Kelsey, who were once before the court in their individual capacity as interveners have withdrawn and are not now before the court. As above stated, the trial court sustained a general demurrer to plaintiffs' petition.

The substance of Mrs. Kimbell's allegations are that she, through the agency of Freeman and Kelsey, employed Raphael to secure a loan for the levee improvement district from the Reconstruction Finance Corporation to take up the outstanding bonded indebtedness of the district. It should be noted in the outset that a levee improvement district is a body corporate with power to contract for and on its own behalf, and that its affairs are managed by supervisors appointed for that purpose, subject to the approval, in certain instances, of the state reclamation engineer and the commissioners' court. R.S. arts. 7980, 7986, 8018 and 8026. Mrs. Kimbell was not a supervisor of the district, nor otherwise authorized to contract for the regulation of its affairs. She was therefore undertaking to contract about a matter concerning which she had no authority. Furthermore, neither the levee improvement district nor any of its supervisors are parties to this suit, nor are they otherwise asserting any rights under the purported agreement. So far as the district is concerned, its rights may have been settled by compromise or otherwise. We may therefore eliminate consideration of any right

that the levee improvement district had to enforce such agreement, if any, or to recover damages for breach thereof. Likewise, neither Freeman nor Kelsey are now before the court and we need not consider their rights. But, if it should be held that Mrs. Kimbell, as a mere taxpaying property owner of the district, had a right to contract for the refinancing of the bonded indebtedness of the district, whatever rights she has springs from the agreement alleged to have been made by Raphael on the one hand and Freeman, "acting for himself and all other land owners of the district" on the other hand. She made no contract directly with Raphael. It was not alleged that Freeman had any authority to act for or to bind Mrs. Kimbell in the making of such agreement. It was alleged that Mrs. Kimbell agreed to and accepted the agreement when she learned of it about January 1st, and that she then agreed to pay her part of the expenses, that is, fifteen cents per acre on the land owned by her in the district, but she did not allege that she communicated her acceptance to Raphael, nor that the other land owners who were to pay a part of the expenses ever agreed to pay any part thereof. Certainly, if the land owners of the district never became obligated to raise the expense money contemplated by the agreement, then Raphael was not bound by the agreement. She did not allege that she performed her part of the agreement before Raphael breached same, nor is it alleged that she had not had a reasonable time in which to perform same prior to the time of the breach. It is apparent therefore that the purported contract lacked mutuality. It should also be noted that the refinancing of the bonded indebtedness of the district, as contemplated by the purported agreement, could have been accomplished only with the mutual consent of the levee improvement district and its supervisors, the holders of the outstanding bonds, and the Reconstruction Finance Corporation, from whom the money was to be procured. It is not alleged that said undertaking could have been carried out had Raphael not breached his contract, nor is it alleged that his breach of the agreement prevented the subsequent carrying out of the undertaking. It does not appear therefore that the plaintiff has suffered any damages by reason of the breach.

Mrs. Kimbell prayed that the bonds bought by Raphael be impressed with a

trust in her behalf and seems to be of the opinion that she is entitled to the benefit of any contract made by Raphael for the purchase of said bonds. It should be noted, however, that she did not contract with Raphael to buy the bonds for her, nor did she obligate herself to pay for any bonds so purchased by him.

Under these circumstances, we are of the opinion that the petition failed to state a cause of action and that the court properly sustained a general demurrer thereto.

The judgment of the trial court is affirmed.

GEORGE, J., took no part in the consideration and disposition of this case.